MATTER OF CHATTERTON

In Visa Petition Proceedings

A-19942340

*Decided by Board March 21, 1972*

Despite birth in an independent country of the Western Hemisphere, an alien who meets the conditions set forth in section 202(b)(4) of the Immigration and Nationality Act may be alternately charged to the foreign state of either parent, and within such alternate chargeability may be accorded any classification under section 203(a) of the Act for which eligible (in the instant case, beneficiary accorded second preference classification as the unmarried daughter of a lawful permanent resident alien).* [*Matter of Tiszai*, 12 I. & N. Dec. 425, superseded.]

ON BEHALF OF PETITIONER:
Pro se

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney
(Brief filed)

The petitioner, a lawful permanent resident of the United States, applied for preference status for the beneficiary as his unmarried daughter under section 203(a)(2) of the Immigration and Nationality Act. The District Director, in his order dated July 20, 1971, denied the petition on the ground that the beneficiary, a native of the Western Hemisphere, is eligible only for a special immigrant visa, notwithstanding the alternate chargeability provisions contained in section 202(b) of the Act. The District Director based his decision upon this Board's prior ruling in *Matter of Tiszai*, 12 I. & N. Dec. 425 (BIA, 1967). Because of significant changes in law and regulations since that case was decided, the District Director certified his decision to this Board. His decision will be overruled, and the matter will be remanded for further proceedings.

The petitioner is a native and citizen of Great Britain. The file contains no information with regard to the mother of the beneficiary. The beneficiary, the daughter of the petitioner, was born in

---

* See also, *Matter of Ponce de Leon*, Interim Decision No. 2139, and *Matter of Ascher*, Interim Decision No. 2182.

Peru at a time when the petitioner was temporarily residing in that country in connection with a three-year contract of employment with an accounting firm.

Section 202(b) of the Immigration and Nationality Act, which contains the provisions relating to alternate chargeability to the country of birth of a parent or spouse, has remained unchanged since we decided *Matter of Tiszai, supra*. It reads, in relevant part, as follows:

... For the purposes of this Act the foreign state to which an immigrant is chargeable shall be determined by birth within such foreign state except that (1) an alien child, when accompanied by his alien parent or parents, may be charged to the same foreign state as the accompanying parent or of either accompanying parent if such parent has received or would be qualified for an immigrant visa, if necessary to prevent the separation of the child from the accompanying parent or parents, and if the foreign state to which such parent has been or would be chargeable has not exceeded the numerical limitation set forth in the proviso to subsection (a) of this section for that fiscal year; (2) if an alien is chargeable to a different foreign state from that of his accompanying spouse, the foreign state to whch such alien is chargeable may, if necessary to prevent the separation of husband and wife, be determined by the foreign state of the accompanying spouse, if such spouse has received or would be qualified for an immigrant visa and if the foreign state to which such spouse would be chargeable has not exceeded the numerical limitation set forth in the proviso to subsection (a) of this section for that fiscal year; (3) .... (4) an alien born within any foreign state in which neither of his parents was born and in which neither of his parents had a residence at the time of such alien's birth may be charged to the foreign state of either parent.

For the sake of simplicity, we shall refer to the exception from the general rule for chargeability contained in section 202(b)(1) as the "first exception"; that contained in section 202(b)(2) as the "second exception"; and so on.

The implementing regulations with respect to alternate chargeability are contained in 22 CFR 42.51 through 42.54, inclusive. They now read as follows:

§ 42.51  Exception for accompanying child.

An immigrant child, including a child born in a dependent area, or in an independent country of the Western Hemisphere, accompanied by his alien parent may be charged to the foreign state of birth of the accompanying parent, as provided in section 202(b)(1) of the Act.

§ 42.52  Exception for accompanying spouse.

An immigrant spouse, including a spouse born in a dependent area, or in an independent country of the Western Hemisphere, may, as provided in section 202(b)(2) of the Act, be charged to the foreign state of his accompanying spouse.

§ 42.53 * * *.

§ 42.54  Exception for alien born in foreign state of which neither of his parents was a resident.

An alien who was born in a foreign state, *as defined in § 42.1,* in which neither of his parents was born, and in which neither of his parents had a

83

residence at the time of his birth, may be charged to the foreign state of either parent as provided in section 202(b)(4) of the Act. The parents of such an alien shall not be considered as having acquired a residence within the meaning of section 202(b)(4), if at the time of such alien's birth within the foreign state they were merely visiting temporarily or were stationed there under orders or instructions of an employer, principal or superior authority foreign to such foreign state in connection with the business or profession of the employer, principal or superior authority. (Emphasis supplied.)

The term "foreign state" is defined in 22 CFR 42.1, which reads as follows:

For the purpose of according alternate chargeability pursuant to section 202(b) of the Act, the term "foreign state" is not restricted to those areas to which the numerical limitation prescribed by section 202(a) of the Act applies but includes dependent areas, as defined in this section, *and independent countries of the Western Hemisphere and the Canal Zone.* (Emphasis supplied.)

The term "accompanying" is not defined in the Immigration and Nationality Act but is defined in 22 CFR 42.1 as follows:

"Accompanying" or "accompanied by" means, in addition to an alien in the physical company of a principal alien, an alien who is issued an immigrant visa within 4 months of the date of issuance of a visa to the principal alien, within 4 months of the adjustment of status in the United States of the principal alien, or within 4 months from the date of the departure of the principal alien from the country in which his dependents are applying for visas if he has traveled abroad to confer his foreign state chargeability upon them. An "accompanying" relative may not precede the principal alien to the United States.

In *Matter of Tiszai, supra,* which was decided on August 31, 1967, the issue was whether a special immigrant, born in Mexico of Japanese diplomats assigned to that country, came within the fourth exception. That is, the question was whether the beneficiary was entitled to alternate chargeability to the quota of Japan, the place of her parents' birth. Under the law then in effect, a native of a Western Hemisphere country was not chargeable to any quota, was subject to no numerical limitation, and needed no preference in order to secure an immigrant visa. We held, accordingly, that the provisions of section 202(b)(4) did not apply to a special immigrant.

Since that time a basic change has occurred in the immigration law. On July 1, 1968 the provisions of section 21(e) of the Act of October 3, 1965 became effective, providing for an annual limitation of 120,000 immigrant visas for natives of independent Western Hemisphere countries and the Canal Zone. This has resulted in oversubscription of the "Western Hemisphere quota". For example during the month of March, 1972, immigrant visas are available only to those Western Hemisphere natives whose priority date is earlier than November 22, 1970.

The version of 22 CFR 42.54 in effect when *Tiszai* was decided

was amended on June 27, 1968 with the addition of a reference to the definition of "foreign state" contained in 22 CFR 42.1 (33 F.R. 9398). The definition found in that section, which now specifically includes "independent countries of the Western Hemisphere and the Canal Zone," was added at the same time. The heading under which these sections appear was changed simultaneously from "Foreign state chargeability" to "Chargeability to numerical limitations."

These changes in law and regulation have so changed the legal framework in which our precedent decision in *Matter of Tiszai, supra,* was decided that we now conclude that our decision in *Tiszai* is no longer applicable. We shall now proceed to a resolution of the present case on that basis.

According to section 202(b)(4) which contains the fourth exception, an alien born within any foreign state may be charged to the foreign state of either parent if (1) neither of his parents was born in such state, and (2) neither parent had a residence in the state of his birth at the time of his birth. The facts available upon the present record indicate that the beneficiary was born in Peru when her father was temporarily in that country in connection with his employment. Provided the beneficiary's mother is not a native and resident of Peru, this case appears to fall within the purview of section 202(b)(4). Therefore, the beneficiary may be charged to the foreign state of the birth of the petitioner, unless the beneficiary's mother is a native or resident of Peru.

The beneficiary is chargeable in the first instance under section 101(a)(27), by reason of birth in Peru, to the Western Hemisphere annual limitation of 120,000. By virtue of the operation of section 202(b)(4) of the Immigration and Nationality Act and 22 CFR 42.1 and 42.54 she is alternatively chargeable to the numerical limitation of 170,000 provided in section 201(a) for aliens who are not special immigrants or immediate relatives of United States citizens.

Section 203(a) of the Act provides that aliens who are subject to the numerical limitations in section 201(a) shall be allotted visas in the manner prescribed in subparagraphs 1 through 9 of section 203(a). The beneficiary, then, may be accorded any preference classification under section 203(a) for which she is eligible. As the unmarried daughter of a permanent resident alien she is eligible for preference classification under section 203(a)(2).

We also considered the question of whether the beneficiary, inasmuch as she is a child, must qualify under the first exception, either in addition to, or instead of, under the fourth exception. We have given this question careful consideration and conclude that she need not qualify under the first exception. It is enough that

she meets the requirements of the fourth exception. We note that the fourth exception, although overlapping the first and second exceptions in some instances, is evidently based upon a different rationale than those two exceptions.

We note that the first exception would apply to the present case if it were established that (1) the beneficiary is an alien child, (2) she were "accompanied by" her parent or parents, (3) the accompanying parent was born in a "foreign state," (4) the accompanying parent must have either received or be qualified for an immigrant visa, and (5) there must be a visa available if the child be charged to the foreign state of birth of the accompanying parent. As is stated in section 202(b)(1), the purpose of this exception is to prevent unnecessary separation of an alien child from its parent or parents.

The fourth exception does not contain the same requirements as the first exception. It concentrates on the case of birth in a foreign country when the connection of both parents with that country is tenuous in nature. Hence, the sole requirement is that neither parent was born in or had a residence in the foreign state at the time of birth of the beneficiary.

The fourth exception is not limited to the case of an alien child, as is the first exception; neither is it limited to the case of an alien spouse, as is the second exception. In fact, section 202(b)(4) contains no requirement that an alien qualifying under it be accompanied by anyone. The prevention of the separation of family members is obviously not the primary purpose of this section. That being the case, the fourth exception is also open to alien beneficiaries whose parents may have died, or whose parents are not connected in any direct way with the alien's immigration to the United States. Accordingly, the beneficiary of any preference status, and even beneficiaries of a preference status not geared to close familial relationships with United States citizens or permanent resident aliens, may also come within its purview. Indeed, we find nothing in the statutory language of the section to preclude its application to nonpreference aliens as well. In every case, an alien qualifying for the fourth exception becomes entitled to alternate chargeability only to the foreign state of birth of his parent or parents.

In the present case, the beneficiary might also qualify under the first exception if (1) she were "accompanied by" the petitioner and (2) a visa would be available if she were charged to the foreign state of the petitioner's birth. However, she need not satisfy these requirements since she already qualifies for the fourth exception.

Based upon the foregoing, we hold that the decision of the District Director should be overruled. We could order that the

86

application for preference classification filed by the petitioner t
approved forthwith except for the fact that we have no basis fc
finding that the beneficiary's mother is not a native of Peru an
had no residence in that country at the time of the beneficiary
birth. The matter will be remanded and the following order will t
entered.

**ORDER:** The decision of the District Director is overruled an
the matter is remanded for further proceedings not inconsister
with the foregoing.

87