MATTER OF MARTINEZ-GOMEZ

In Deportation Proceedings

A-13564855

*Decided by Board March 23, 1972*

Conviction of a violation of section 11557 of the California Health and Safety Code, which provides it is unlawful to "maintain any place for the purpose of unlawfully selling, giving away or using any narcotic," is a conviction of a law relating to "illicit traffic in narcotic drugs or marijuana" within the meaning of section 241(a)(11) of the Immigration and Nationality Act.

CHARGE:

Order: Act of 1952—Section 241(a)(11) [8 U.S.C. 1251(a)(11)]—Convicted of law relating to illicit traffic in narcotics.

ON BEHALF OF SERVICE:  Jay Segal
Trial Attorney
(Brief filed)

The special inquiry officer certifies his order terminating the above-captioned proceedings. The trial attorney has submitted a brief in support of his argument that the respondent is deportable under section 241(a)(11) of the Immigration and Nationality Act as an alien who has been convicted of a law relating to the illicit traffic in narcotic drugs or marijuana. We will reverse the special inquiry officer.

The respondent, a native and citizen of Mexico, was admitted to the United States as an immigrant on June 18, 1967. He was convicted on September 29, 1967 in the Superior Court of California in and for the County of Santa Clara for violation of section 11557 of the California Health and Safety Code.[1] Originally, the respondent was charged under section 11530 of the Health and

---

[1] Section 11557, California Health and Safety Code provides as follows: *"Maintenance of Place for Unlawful Disposal of Narcotics....* Every person who opens or maintains any place for the purpose of unlawfully selling, giving away or using any narcotic shall be punished by imprisonment in the county jail for not more than one year, or in the State prison for not more than ten years..."

104

Safety Code for possession of marijuana. He pled not guilty to this charge. He was granted permission on September 5, 1967 to withdraw his plea of not guilty and to enter a plea of guilty to a violation of section 11557, a "lesser included offense" (Ex. 2). Imposition of sentence was suspended for a period of two years and the respondent was placed on probation, conditioned upon the payment of a fine of $150 plus penalty assessment of $16.00 (Ex. 2).

The issue before us is whether section 11557 is a law relating to illicit trafficking in narcotic drugs or marijuana. Relying on our decision in *Matter of Sum*, 13 I. & N. Dec. 569 (BIA, 1970), the special inquiry officer held that it was not such a law. However, *Matter of Sum* dealt with a quite different question, namely the question whether a conviction for unlawful *use* of proscribed drugs rendered an alien deportable as a person convicted for unlawful *possession* of such drugs. This respondent was convicted for violation of a statute which does not at all require, for conviction, the unlawful use or possession of proscribed drugs by the accused person. Section 11557 of the California Health and Safety Code under which this respondent was convicted was clearly designed to eliminate the illegal traffic in narcotic drugs by making it a crime for a person to provide a place for the unlawful disposal of narcotics.

We are of the opinion that the statute taken at its minimum involves a law "relating to ... illicit traffic in narcotic drugs or marijuana." The primary purpose of section 11557 is to eliminate or control traffic in narcotics by making it a crime to "maintain any place" for the "selling, giving away or using" any narcotic. The determining factor is the maintenance of the place and not the selling, giving away or using narcotics, *People* v. *Cannon*, 148 C.A. 2d 163, 306 P.2d 589 (C.A. Cal., 1957).

The case will be remanded to the special inquiry officer for a reopened hearing and for the entry of an order of deportation pursuant to section 243(a) of the Immigration and Nationality Act. An appropriate order will be entered.

**ORDER:** It is ordered that the case be remanded to the special inquiry officer for futher proceedings consistent with the foregoing opinion.

105

MATTER OF PONCE DE LEON

In Visa Petition Proceedings

A–18257676

*Decided by Board March 30, 1972*

Despite birth in an independent country of the Western Hemisphere, an alien who meets the conditions of section 202(b)(2) of the Immigration and Nationality Act may be alternately charged to the foreign state of his accompanying spouse, and within such alternate chargeability may be accorded any classification under section 203(a) of the Act for which eligible (in the instant case, beneficiary accorded second preference classification as the spouse of an alien lawfully admitted for permanent residence). [See also, *Matter of Chatterton*, Interim Decision No. 2133, and *Matter of Ascher*, Interim Decision No. 1282.]

ON BEHALF OF PETITIONER:
James J. Orlow, Esquire
824 Bankers Securities Bldg.
Philadelphia, Pa. 19107

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

The district director, in an order dated December 7, 1971, granted the lawful permanent resident alien petitioner's application for preference status for the beneficiary as her spouse under section 203(a)(2) of the Immigration and Nationality Act. The district director held that the beneficiary was entitled to alternate chargeability to the country of the petitioner's birth, despite the fact that the beneficiary is a special immigrant by virtue of his birth in an independent country of the Western Hemisphere. The district director recognized that his decision seemingly conflicted with our prior precedent decision in *Matter of Tiszai*, 12 I. & N. Dec. 425 (BIA, 1967), which he felt should no longer be applicable because of intervening changes in law and regulations. Because there was an appearance of conflict, the district director certified his decision to this Board. His decision will be affirmed.

The petitioner is a native of Germany. She was admitted to the United States for permanent residence on October 26, 1964. The beneficiary, her spouse, is a native of Mexico. The record is silent as to the birthplace or residence of the beneficiary's parents.

The general rule is that an alien is chargeable to the foreign state of his birth. In the beneficiary's case, this would be Mexico,

106

but no visas are available to natives of Mexico, who are special immigrants by virtue of their birth in the Western Hemisphere, unless they have a priority date of November 22, 1970 or earlier. The beneficiary evidently does not have an early enough priority date to qualify for a special immigrant visa. Therefore, the issue in the case is whether he qualifies for one of the exceptions to the general rule contained in section 202(b) of the Act. If he so qualifies, then he may properly be accorded a preference status under section 203(a) of the Act, assuming he is otherwise qualified.

Our prior precedent decision in *Matter of Tiszai, supra,* formerly served to bar access to the alternate chargeability provisions contained in section 202(b) to natives of the Western Hemisphere on the ground that they were special immigrants. That decision was held by us to be no longer applicable due to substantial changes in law and regulations since it was decided, *Matter of Chatterton,* A–19942340, Interim Decision No. 2133 (BIA, March 21, 1972). Consequently, *Matter of Tiszai* no longer serves as an obstacle to the beneficiary qualifying for an exception under section 202(b).

Section 202(b) of the Immigration and Nationality Act, which contains the provisions relating to alternate chargeability to the country of birth of a parent or spouse reads, in relevant part, as follows:

> ... For the purposes of this Act the foreign state to which an immigrant is chargeable shall be determined by birth within such foreign state except that (1)...; (2) if an alien is chargeable to a different foreign state from that of his accompanying spouse, the foreign state to which such alien is chargeable may, if necessary to prevent the separation of husband and wife, be determined by the foreign state of the accompanying spouse, if such spouse has received or would be qualified for an immigrant visa and if the foreign state to which such spouse would be chargeable has not exceeded the numerical limitation set forth in the proviso to subsection (a) of this section for that fiscal year; (3)...; (4) an alien born within any foreign state in which neither of his parents was born and in which neither of his parents had a residence at the time of such alien's birth may be charged to the foreign state of either parent.

For the sake of simplicity, we shall refer to the exception from the general rule for chargeability contained in section 202(b)(2) as the "second exception" and that contained in section 202(b)(4) as the "fourth exception."

The term "accompanied by" is not defined in the Immigration and Nationality Act but is defined in 22 CFR 42.1 as follows:

> "Accompanying" or "accompanied by" means, in addition to an alien in the physical company of a principal alien, an alien who is issued an immigrant visa within 4 months of the date of issuance of a visa to the principal alien, within 4 months of the adjustment of status in the United States of the principal alien, or within 4 months from the date of the departure of the principal alien from the country in which his dependents are applying for

visas if he has traveled abroad to confer his foreign state chargeability upon them. An "accompanying" relative may not precede the principal alien to the United States.

The term "foreign state" is defined in 22 CFR 42.1 as follows:

For the purpose of according alternate chargeability pursuant to section 202(b) of the Act, the term "foreign state" is not restricted to those areas to which the numerical limitation prescribed by section 202(a) of the Act applies but includes dependent areas, as defined in this section, and independent countries of the Western Hemisphere and the Canal Zone.

As a spouse, the beneficiary could conceivably strive to qualify for either the second or the fourth exception. However, the fourth exception is available only to an alien born in a foreign state in which neither of his parents was born and in which neither of his parents had a residence at the time of his birth. In the present case we have insufficient information upon which to base either of these required findings. Hence, we must rule out the fourth exception upon the record before us.

The question then becomes: Does the beneficiary qualify for the second exception under section 202(b)(2)? In order to qualify, it must be established (1) that he is an alien spouse, (2) that he will be "accompanied by" his spouse within the meaning of that term's definition found in 22 CFR 42.1, (3) that the accompanying spouse was born in a "foreign state" as defined in 22 CFR 42.1, (4) that the accompanying spouse either has received or would be qualified for an immigrant visa, and (5) that there would be a visa available if the beneficiary be charged to the foreign state of birth of the petitioner.

The district director found the beneficiary qualified for an exception under section 202(b)(2). He noted that the beneficiary was therefore entitled to alternate chargeability to the foreign state of birth of the petitioner (Germany) if a consular officer found the beneficiary "otherwise qualified." Inasmuch as the beneficiary qualifies for an exception under section 202(b)(2) he is alternately chargeable to the numerical limitation of 170,000 provided for in section 201(a) of the Act. Section 203(a) provides that aliens who are subject to the numerical limitations in section 201(a) shall be allotted visas in the manner prescribed in subparagraphs 1 through 9 of section 203(a). The beneficiary, then, may be accorded any classification under section 203(a) for which he is eligible. The district director approved the petitioner's application and accorded the beneficiary preference status under section 203(a)(2) as the spouse of an alien lawfully admitted for permanent residence. This was correct and we shall affirm the district director's order.

Both the appellate trial attorney and petitioner's counsel sug-

gested at oral argument that the Board enter an order containing a condition that the beneficiary must meet the definition of "accompanied by" found in 22 CFR 42.1 at the time he is issued an immigrant visa. We reject this suggestion because we do not believe it necessary to enter a conditional order in this case. The petitioner is already physically present within the United States. Therefore, the only way the beneficiary might qualify under 22 CFR 42.1 as an alien "accompanied by" his spouse would be if he were to be issued an immigrant visa "within 4 months from the date of departure of the principal alien from the country in which his dependents are applying for visas if he has traveled abroad to confer his foreign state chargeability upon them." The consular official to whom the beneficiary makes application for an immigrant visa will have no trouble deciding upon the facts before him at that time whether the beneficiary then qualifies as an alien "accompanied by" his spouse.

The district director's decision is affirmed and the following order shall be entered.

**ORDER:** It is ordered that the order of the district director, dated December 7, 1971, approving the petitioner's petition to accord the beneficiary preference status as provided in section 203(a)(2) of the Immigration and Nationality Act be and the same is hereby affirmed.